IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| Lisa Phillips,<br><br>        Plaintiff,<br><br>vs.<br><br>Specialized Loan Servicing, LLC<br>a Delaware company,<br><br>        Defendant. | Case No.: 3:16-cv-00088-GEC<br><br>**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANT SPECIALIZED LOAN SERVICING LLC'S** |

      **NOW COMES** the Plaintiff, Lisa Phillips, by and through her counsel, who, for her Motion for Summary Judgment as to Defendant Specialized Loan Servicing, LLC, states as follows:

      It is beyond dispute that Defendant, Specialized Loan Servicing, LLC falsely verified inaccurate information in Plaintiff's credit file with Trans Union, LLC regarding a mortgage loan in willful violation of the 15 U.S.C. § 1681s-2 of the FCRA. Accordingly, Plaintiff seeks summary judgment pursuant to Fed. R. Civ. P. 56 under Counts I and/or II of her Complaint.

      **WHEREFORE**, Plaintiff, Lisa Phillips, respectfully requests that this Honorable Court enter an order granting summary judgment in her favor and against Specialized Loan Servicing LLC as to liability under Count I of the Complaint, or in the alternative Count II of the Complaint, and scheduling a hearing on the issue of Plaintiff's damages.

i

# BRIEF IN SUPPORT OF PLAINTIFF'S
# MOTION FOR SUMMARY JUDGMENT

## I. FACTUAL BACKGROUND

This lawsuit arises from Defendant Specialized Loan Servicing, LLC's ("Defendant" or "SLS") violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA"). (*See* Doc #1).

In November of 2006, Plaintiff, Lisa Phillips, purchased a home in Las Vegas, Nevada, which was financed by IndyMac Bank and secured by a second mortgage on the home. (Exhibits A and B). On August 5, 2009, servicing of the mortgage loan was transferred to Defendant Specialized Loan Servicing, LLC ("SLS"), and assigned account number 1003203643 (hereinafter the "Loan"). (Exhibit C).

Soon thereafter, Plaintiff became delinquent on her payment obligation; making her last payment on the Loan on August 26, 2009. (Exhibits C, E, F, and G). On January 26, 2010, SLS charged off the Loan, and the home was sold by way of short sale in January of 2011. (Exhibit D, p. SLS 112; Exhibit I).

In January of 2016, Plaintiff sent a letter to Trans Union LLC ("Trans Union') disputing items of information SLS reported to Trans Union regarding the Loan; specifically, Plaintiff complained that the Loan had been "re-aged." (Exhibit J). Tran Union notified SLS that Plaintiff disputed the information Defendant reported regarding the Loan on January 25, 2016, and SLS responded to Plaintiff's dispute on January 27, 2016. (Exhibit E).

Defendant's responded to Plaintiff's January of 2016 dispute by reporting that the Loan was 90-119 days past due in May of 2011. (Exhibit E). However, Defendant reported that "no payment history was available" regarding the loan from January through April of 2011. (Exhibit

2

E; *See* Exhibit K, p.4-12). Defendant also reported to Trans Union that no payment history was available regarding the Loan prior to December of 2010 "either because the account was not open or because no payment history could be furnisher." (Exhibit E; *See* Exhibit K, p.4-12).

In the summer of 2016, Plaintiff sent a second letter to Trans Union disputing items of information SLS reported to Trans Union regarding the Loan; specifically, Plaintiff complained that SLS inaccurately reported the date of first delinquency regarding the Loan. (Exhibit N). Tran Union notified SLS of Plaintiff second dispute, and SLS responded to Plaintiff's second dispute on June 20, 2016. (Exhibit F). SLS continued to report that the Loan was 90-119 days past due in May of 2011 in response to Plaintiff's second dispute. (Exhibit F). Defendant further reported that "no payment history was available" regarding the loan from January through April of 2011, and "no payment history was available" regarding the loan from June of 2011 through May 2016. (Exhibit F; *See* Exhibit K, p.4-12). Defendant also continued to report to Trans Union that no payment history was available regarding the Loan prior to December of 2010 "either because the account was not open or because no payment history could be furnisher." (Exhibit F; *See* Exhibit K, p.4-12). On June 22, 2016, Trans Union sent Plaintiff a letter regarding the results of its reinvestigation of Plaintiff's second dispute, which showed that SLS reported that the Loan was 90 days late in May of 2011, but that payment status was unknown from January through April of 2011. (Exhibit O).

On August 26, 2016, Plaintiff sent a third letter to Trans Union disputing items of information SLS reported to Trans Union regarding the Loan; specifically, Plaintiff complained that May 2011 date of first delinquency reported by SLS was false because she first became delinquent on the account in September of 2009, attaching a letter from SLS dated October 27, 2009, which shows that the Loan was delinquent at that time. (Exhibit P). Plaintiff requested that

3

Trans Union remove the notation in the account history portion of Defendant's trade line indicating that the Loan first became delinquent in May of 2011, and remove the remark which states that the maximum delinquency on the account was 90 days in May of 2011. (Exhibit P). Tran Union notified SLS of Plaintiff's third dispute regarding the Loan on September 9, 2016. (Exhibit G).

On September 13, 2016, SLS responded to Plaintiff's third dispute, once again reporting that the Loan was 90-119 days past due in May of 2011. (Exhibit G). Defendant also continued to report that "no payment history was available" regarding the loan from January through April of 2011, and "no payment history was available" regarding the loan from June of 2011 through August 2016. (Exhibit G; *See* Exhibit K, p.4-12). Defendant also maintained that no payment history was available regarding the Loan prior to December of 2010 "either because the account was not open or because no payment history could be furnisher." (Exhibit G; *See* Exhibit K, p.4-12). On September 14, 2016, Trans Union sent Plaintiff a letter regarding the results of its reinvestigation of Plaintiff's third dispute, which showed that SLS again reported that the Loan was 90 days late in May of 2011, but that payment status was unknown from January through April of 2011. (Exhibit Q).

The Loan was not 90-119 days past due in May of 2011, because the last payment on the account was made August 26, 2009. (Exhibits C, E, F, and G). Further, the payment history regarding the Loan was not unavailable to SLS from January through April of 2011, or from June of 2011 through August of 2016, because SLS was the loan servicer during those months. (Exhibit C; *See* Exhibit D). Ms. Phillips now seeks entry of an order granting summary judgment in her favor and against SLS for violation of the FCRA for the reasons set forth herein.

4

## II.   STANDARD OF REVIEW

Fed. R. Civ. P. 56(a) states, "[a] party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-248 (1986).  Summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id*.

The movant has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex v. Catrett,* 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. 250, quoting Fed. R. Civ. P. 56(e).  In deciding a motion for summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

## III. ARGUMENT

As observed by the U.S. Supreme Court, the FCRA was enacted for the protection of consumers through the imposition of strict limitations upon the collection and dissemination of consumer financial information:

> Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.

*Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 52 (2007); *Saunders v. Branch Banking and Trust Co. of Va.*, 526 F.3d 142, 147 (4th Cir. 2008). Accordingly, the FCRA must be "liberally construed in favor of the consumer." *Saunders v. Equifax Information Services, LLC*, 469 F.Supp.2d 343, 356 (E.D. Va. 2007), citing *Jones v. Federated Fin. Reserve Corp*., 144 F.3d 961, 964 (6th Cir. 1998).

15 U.S.C. § 1681i of the FCRA sets forth the procedure by which a consumer may dispute the accuracy of information contained in their credit reports by filing disputes with the credit reporting agencies ("CRA's"). The CRAs are then required to provide prompt notice of the dispute to the furnisher of the disputed information under 15 U.S.C. § 1681i(a)(2)(A). *Saunders v. Branch Banking and Trust Co. of Va.*, 526 F.3d 142, 147 (4th Cir. 2008). 15 U.S.C. § 1681s-2 of the FCRA sets forth responsibilities of furnishers of information to consumer credit reporting agencies, including the furnishers duties upon receiving notice of a dispute. *Id*. at 147-148.

Upon receiving notice of a dispute, the furnisher of the information (in this case, SLS) must:

>  (A) conduct an investigation with respect to the disputed information;
>
>  (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
>  (C) report the results of the investigation to the consumer reporting agency;

6

      (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

      (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—

          (i)     modify that item of information;

          (ii)    delete that item of information; or

          (iii)   permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b); *Saunders v. Branch Banking and Trust Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008).

It is important to note that the "FCRA requires furnishers to determine whether the information that they previously reported to a CRA is '*incomplete* or inaccurate.'" *Id*. at 148, citing 15 U.S.C. § 1681s–2(b)(1)(D) (emphasis in original). Accordingly:

> Congress clearly intended furnishers to review reports not only for inaccuracies in the information reported but also for omissions that render the reported information misleading. Courts have held that a credit report is not accurate under FCRA if it provides information in such a manner as to create a materially misleading impression.

*Id*. at 148, citing *Dalton v. Capital Associated Indus., Inc.,* 257 F.3d 409, 415 (4th Cir.2001); *Koropoulos v. Credit Bureau, Inc.,* 734 F.2d 37, 40–42 (D.C.Cir.1984); *Alexander v. Moore & Assocs., Inc.,* 553 F.Supp. 948, 952 (D.Haw.1982).

If a furnisher fails to comply with requirements set forth under 15 U.S.C. § 1681s-2(b), then 15 U.S.C. § 1681n and 15 U.S.C. § 1681o authorize consumers to bring suit for damages. *See Saunders v. Branch Banking and Trust Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008). In order

7

to prevail, "a plaintiff must establish three elements: (1) that he or she notified the consumer reporting agency of the disputed information, (2) that the consumer reporting agency notified the defendant furnisher of the dispute, and (3) that the furnisher then failed to investigate and modify the inaccurate information." *Magruder v. Educational Systems Federal Credit Union*, 194 F.Supp.3d 386, 390 (D. Md. 2016), citing *Ausar–El v. Barclay Bank Delaware*, No. PJM 12–0082, 2012 WL 3137151, at *3 (D.Md. July 31, 2012) attached as Exhibit R; *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir.2004)

If the FCRA has been violated by a data furnisher (such as SLS), the question remains whether the furnisher negligently or willfully violated the FCRA. 15 U.S.C. § 1681o(a); 15 U.S.C. § 1682n(a). In *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007), the United States Supreme Court held that willful violations of the FCRA includes not only knowing and intentional violations of the Act, but also reckless violations. *Id*. at 59-60; *Berry v. Schulman*, 807 F.3d 600, 605 (4th Cir. 2015); *Stillmock v. Weis Markets, Inc.*, 385 Fed. Appx. 267, 271 (4th Cir. 2010). The Supreme Court went on to characterize recklessness as "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known,'" and noted that a company recklessly violated the FCRA when its actions are "objectively unreasonable." *Safeco Ins. Co.*, 551 U.S. 68-70; *See Berry*, 807 F.3d 605; *Stillmock*, 385 Fed. Appx. 271 (4th Cir. 2010). No showing of malice or evil motive is required is required to prove a willful violation of the FCRA, and a willful violation may be based "upon a reckless disregard of a statutory duty." *Armeni v. Trans Union LLC, Inc.*, 3:15-cv-00066, 2016 WL 5317593, n. 3 (W.D. Va. Sept. 22, 2016), citing *Safeco Ins. Co. of Amer.*, 551 U.S. 57-59; *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 & n.4 (4th Cir. 2008); and *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001).

8

There is no dispute that Ms. Phillips notified Trans Union of her dispute regarding the information furnished by SLS under 15 U.S.C. § 1681i on three (3) separate occassions. (Exhibits J, N, and P). Further, there is no dispute that Trans Union transmitted each of Ms. Phillips' dispute to SLS. (Exhibits E, F, and G). Accordingly, there is no dispute that Ms. Phillips has satisfied the first two elements to her claim regarding SLS' violation of 15 U.S.C. § 1681s-2(b). *Magruder*, 194 F.Supp.3d 390. The question remains whether SLS "failed to investigate or rectify the disputed charge." *Id*. The answer to this question is clearly, yes.

Upon receipt of each of Ms. Phillips' disputes, SLA was required to conduct a "reasonable investigation to determine whether the disputed information [could] be verified." with respect to the disputed information. *Johnson v. MBNA America Bank, N.A.*, 357 F.3d 426, 431 (4th Cir. 2004). In *Johnson*, the Fourth Circuit Court of Appeals stated that "the plain meaning of 'investigation' clearly requires some degree of careful inquiry by creditors," and that a superficial investigation is unreasonable. *Id*.; *See also Boggio v. USAA Federal Sav. Bank*, 696 F.3d 611, 616 (6th Cir. 2012) ("the term 'investigation' itself denotes a 'fairly searching inquiry,' or at least something more than a merely cursory review," and that "[a] consumer may show a violation of an information furnisher's duty under § 1681s–2(b)(1)(A) by showing that the furnisher's investigation was not reasonable"). As part of the investigation, the information furnisher (here, SLS) "must review all relevant information provided to it by a CRA regarding a dispute in order to comply with § 1681s–2(b)(1)(B)." *Boggio*, 696 F.3d 616.

In this case, SLS failed to conduct a reasonable investigation with respect to the information disputed by Ms. Phillips, and failed to review all relevant information provided by Trans Union, in violation of 15 U.S.C. § 1681s-2(b)(1)(A) and (B). As a result, Defendant failed to modify, delete of permanently block its reporting of inaccurate of information regarding the

9

Loan in violation of 15 U.S.C. § 1681s-2(b)(1)(E). In fact, each entry in the Account History portion of Defendant's responses to all three of Plaintiff's disputes, from December of 2010 through May of 2011, are inaccurate. (Exhibits E, F, and G). Had Defendant conducted even a cursory review of its own records, the information provided by Trans Union, or simply reviewed the information reported to Trans Union with an understanding as to what that information actually meant, it would have discovered that the information it reported was inaccurate or could not be verified. Defendant, however, utterly failed to fulfill its duties under 15 U.S.C. § 1681s-2(b)(1) in willful violation of the FCRA.

Defendant's inaccurate reporting of the Loan's Account History is significant because it falsely extends the period of time the Loan will appear in Ms. Phillips' credit file by fourteen (14) months. *See* 15 U.S.C. § 1681c(a)(4); 15 U.S.C. § 1681c(c)(1). This phenomenon is commonly referred to as the "re-aging" of an account. (Exhibit S). An account is said to be "re-aged" when the delinquency date is rolled back to extend the time it can be collected upon or included in a consumer's credit files. (Exhibit S). Defendant's false reporting that the Loan was 90-119 days past due in May of 2011 has, in effect, re-aged the Loan in Trans Union's credit file regarding Ms. Phillips. (*See* Exhibits O and Q).

This case involves an account that was charged off by Defendant. (Exhibit D, p. SLS 112). CRAs are prohibited from reporting "[a]ccounts placed for collection or charged to profit and loss which antedates the report by more than seven years." 15 U.S.C. § 1681c(a)(4). In the case of a charged-off account, the seven-year period during which it can be included in a consumer's credit file begins "upon expiration of the 180-day period beginning on the date of the commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action." 15 U.S.C. § 1681c(c)(1).

10

Here, the Loan was charged to profit and loss by SLS on January 26, 2010, as plainly stated in Defendant's own Note History. (Exhibit D, p. SLS 112). The "delinquency which immediately preceded the… charge to profit and loss" occurred on September 1, 2009, when Plaintiff failed to make her loan payment. (Exhibits E, F, G, O and Q). Accordingly, the seven-year period during which the Loan may reported began on February 28, 2010, which is one hundred eighty (180) days from February 28, 2010. 15 U.S.C. § 1681c(c)(1). Therefore, the Loan should have been purged from Trans Union's credit file regarding Ms. Phillips on March 1, 2017. 15 U.S.C. § 1681c(c)(1). However, the Loan will remain in Ms. Phillips credit file until May of 2018 (fourteen months longer than it should be), as the result of Defendant's inaccurate reporting of the Loan's Account History to Trans Union; specifically, Defendant's false reporting that the account was 90-119 days past due in May of 2011, and its repeated failure to correct that inaccuracy. (Exhibits E, F, G, O and Q; Exhibit K, p. 4-12).

Ms. Phillips' January 2016 dispute letter challenged Defendant's reporting of the Loan as having been "re-aged," while Plaintiff's June 2016 dispute letter challenged SLS's reporting of the "date of first delinquency." (Exhibits J and N). Plaintiff's most recent dispute letter, sent in August of 2016, states that:

> You are reporting that I first became delinquent on the above trade line in May 2011. That is false. I first became delinquent on the above trade line in September 2009. Please see the attached letter from Specialized Loan Servicing dated October 27, 2009 showing that I was delinquent at that time. In June 2011, I settled the above trade line. Please see the attached letter from Specialized Loan Servicing dated June 13, 2011 confirming the same. <u>Please remove the remark under the payment history showing that I first became delinquent in May 2011. Please also remove the remark which states, "Maximum Delinquency of 90 days in May 2011" from my credit report</u>.

(Exhibit P, emphasis added).

11

While each of Plaintiff's dispute letters articulate her complaint regarding the information reported by SLS in a slightly different manner, each dispute letter focuses on the date upon which the Loan should be removed from Ms. Phillips' credit file. As a result, Trans Union directed SLS to "verify all account information" when responding to each of Plaintiff's three disputes since each of Plaintiff's disputes relate to the Account History reported by SLS; specifically, Defendant's reporting the Loan as 90-119 days past due in May of 2011. (Exhibits E, F, G, O and Q; Exhibit K, p. 4-12).

SLS' reporting of the Loan as 90-119 days past due in May of 2011 is significant because it is the item of information used by Trans Union to determine when the Loan should be removed from Ms. Phillips' credit file. (*See* Exhibits O and Q). According to Trans Union, the Loan will be removed from Ms. Phillips' credit file in May of 2018; seven years from May of 2011. This is no coincidence.

The Consumer Data Industry Association's ("CDIA") Credit Reporting Resource Guide ("CRRG") provides guidance to information furnishers, such as SLS, regarding the proper manner of reporting an Account History; defining both the numeric values to be inserted into an Account History, as well as the proper use of those numeric values. (Exhibit K, p. 4-12, 5-16). The CRRG provides a specific example regarding the proper manner of reporting an account that has been charged off, like the Loan at issue in this case. (Exhibit K, p. 5-16).

Exhibit 5, Example D, on page 5-16 of the CRRG provides an example of the proper manner of reporting a charged off account in the Account History:

12

> D. Account Status Code = 97; Date of Account Information = 01/31/2012; Date of First Delinquency = 06/30/2010
> Field 18 = LLGGGGGGGG66654332100010
>
> In the above example, field 18 data represents, from left to right, 12/31/2011 through 01/31/2010. The L's indicate that the account was a charge-off from 12/2011 through 11/2011, and the G's indicate that the account was a collection from 10/2011 through 03/2011.
>
> **Note: The Date of First Delinquency (06/30/2010) represents the date of the 30-day delinquency that led to the status being reported.**

(Exhibit K, p. 5-16).[1] Exhibit 5, Example D, of the CRRG illustrates why Defendant's reporting of the Loan's Account History is materially inaccurate.

The Loan was charged off in January of 2010. (Exhibit D, p. 112). Exhibit 5, Example D, of the CRRG makes clear that value "L" should be reported in the Account History each and every month an account is in a charge off status. (Exhibit K, p. 4-12, and 5-16). Therefore, value "L" should have been reported in the Account History each and every month from January 2010 through May of 2011.[2] (Exhibit D, p. SLS 112; *See* Exhibits E, F, G, O and Q). Defendant,

---

[1] Although it is not stated in Exhibit 5, Example D, of the CRRG, the 0's indicate that the example account was current in January 2010. (Exhibit K, p. 4-12, and 5-16). The example account then became 30-59 days past due in February of 2010, as indicated by the value 1, but was brought current from March of 2010 through May of 2010. (Exhibit K, p. 4-12, and 5-16). The example account became delinquent again in June of 2010, and indicated by value 1 in the sixth byte, moving right to left. (Exhibit K, p. 4-12, and 5-16). The example account fell behind 60-89 days in July of 2010, as indicated by value 2, and was delinquent 90-119 days August through September of 2010, as indicated by value three. (Exhibit K, p. 4-12, and 5-16). The example account continued to fall behind as represented by value 4 in the 10th byte, moving right to left, which indicates the example account was 120-149 days delinquent in October of 2010, and fell 150-179 days behind in November of 2010. (Exhibit K, p. 4-12, and 5-16). The example account was more than 180 days delinquent from December of 2010 through February of 2011, as indicated by value 6, and the example account was place for collection in March of 2011. (Exhibit K, p. 4-12, and 5-16).

[2] The account was closed in June of 2011. (Exhibits E, F, G, O and Q). Accordingly, Defendant properly reported value "D" in the Account History for June of 2011 and each month thereafter. (*See* Exhibit K, p. 4-12).

13

however, never reported value L in the Loan's Account History when responding to any of Plaintiff's three (3) disputes. (Exhibits E, F, and G). Therefore, each entry in the Account History portion of Defendant's response to each of Plaintiff's three (3) disputes, from December of 2010 through May of 2011, are inaccurate. (Exhibits E, F, and G).

Even if the account had not been charged off in January of 2010, Defendant's reporting of the Loan's Account History is still materially inaccurate. The Account History portion of Defendant's response to each of Plaintiff's three disputes are essentially the same, although each include additional months; reflecting the passage of time between Plaintiff's disputes. (Exhibits E, F, and G). The Account History portion of Defendant's response to Ms. Phillips most recent dispute, sent in August of 2016, was as follows:

| Account History – Request | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Month | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan |
| 2016 | | | | | D | D | D | D | D | D | D | D |
| 2015 | D | D | D | D | D | D | G | D | D | D | D | D |
| 2014 | D | D | D | D | D | D | D | D | D | D | D | D |
| 2013 | D | D | D | D | D | D | D | D | D | D | D | D |
| 2012 | D | D | D | D | D | D | D | D | D | D | D | D |
| 2011 | D | D | D | D | D | D | D | 3 | D | D | D | D |
| 2010 | B | - | - | - | - | - | - | - | - | - | - | - |
| 2009 | | | | | | | | | | | | |
| Account History – Response | | | | | | | | | | | | |
| Month | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan |
| 2016 | | | | | D | D | D | D | D | D | D | D |
| 2015 | D | D | D | D | D | D | D | D | D | D | D | D |
| 2014 | D | D | D | D | D | D | D | D | D | D | D | D |
| 2013 | D | D | D | | D | D | D | D | D | D | D | D |
| 2012 | D | D | D | | D | D | D | D | D | D | D | D |
| 2011 | D | D | D | D | D | D | D | D | D | D | D | D |
| 2010 | | | | | | | | | | | | |
| 2009 | | | | | | | | | | | | |

(Exhibit G).

Defendant's reporting of value B in the Account History for December of 2010 means that "[n]o payment history available prior to this time – either because the account was not open or because the payment history cannot be furnished." (Exhibit K, p. 4-12). This is inaccurate because Plaintiff's payment history was and remains available to SLS since Defendant has serviced the

14

Loan since August 5, 2009. (Exhibit C). Accordingly, Defendant's reporting of value B in the Account History for December 2010 is inaccurate.

Further, Defendant's failure to report the Account History from August of 2009 (when SLS became the servicer) through December of 2010 renders the Account History incomplete. (*See* Exhibits E, F, and G). Information furnishers, such as SLS, have a duty to modify incomplete information when responding to a consumer's dispute. 15 U.S.C. § 1681s-2(b)(1)(E) *Saunders v. Branch Banking and Trust Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008); *Dalton v. Capital Associated Indus., Inc.,* 257 F.3d 409, 415 (4th Cir.2001); *Koropoulos v. Credit Bureau, Inc.,* 734 F.2d 37, 40–42 (D.C.Cir.1984); *Alexander v. Moore & Assocs., Inc.,* 553 F.Supp. 948, 952 (D.Haw.1982). Accordingly SLS failed in its duty to update the Loan's incomplete Account History in response to each of Plaintiff's disputes.

Defendant's reporting of the Loan as 90-119 days past due in the Account History for May of 2011 is also materially inaccurate, even if the account had not been charged off in January of 2010. (*See* Exhibits E, F, and G). Obviously an account cannot be 90-119 days past due (indicated by value 3 in the Account History) until it has been 60-89 days past due (indicated by value 2 in the Account History) and 30-59 past due (indicated by value 1 in the Account History). (Exhibit K, p. 4-12, and 5-16). If SLS was unaware of the account status prior to May of 2011, as indicated by value D reported from January of 2011 through April of 2011, then Defendant has no basis for claiming that the account suddenly became 90-119 days past due in May of 2011. (Exhibits E, F, and G).

More importantly in the context of this case, SLS had no way to confirm that the Loan was 90-119 days past due in May of 2011 when responding to Plaintiff's disputes because, according to Defendant's own reporting, no payment history was available regarding the account prior to

15

May of 2011. (Exhibits E, F, and G; Exhibit K, p. 4-12, and 5-16). SLS was required to modify, delete, or permanently block reporting of "an item of information disputed by a consumer [if] found to be inaccurate, incomplete or cannot be verified." 15 U.S.C. § 1681s-2(b)(1)(E). SLS undoubtedly failed to fulfill that duty in response to each of Plaintiff's disputes when it continued to report that the Loan was 90-119 days past due in May of 2011 to Trans Union without basis. (Exhibits E, F, and G).

SLS reported to Trans Union that the Loan the loan was presently in a charge off status when it Defendant responded to each of Plaintiff's disputes,[3] but failed to include information regarding when the charge off occurred in the Account History portions of its responses. (Exhibits E, F, and G). Trans Union estimated that the account will be removed from Ms. Phillips' credit file in May of 2018; seven years from the most recent delinquency reported by SLS, May of 2011. (*See* Exhibits O and Q). Accordingly, the false extension of the period of time in which the Loan will appear in Trans Union's credit file regarding Ms. Phillips by fourteen (14) months is the direct result of SLS falsely reporting that the Loan was 90-119 days past due in May of 2011.

Had Defendant conducted even a cursory review of its own records as part of its investigation of Plaintiff's disputes, it would have known that the Loan as charged off in January of 2010 and that the Account History reported to Trans Union was inaccurate. SLS also would have known that reporting no Account History regarding the Loan prior to December of 2010 was also inaccurate, and that its failure to accurately report the Account History from August of 2009 rendered its reporting incomplete, had Defendant reviewed of its own records as part of its

---

[3] The SLS included Payment Rating "L" in the Pay-Rate field in each of its responses to Plaintiff's three (3) disputes, which indicates that the account is presently in a charge off status. (Exhibits E, F, and G; Exhibit K, p. 4-11).

16

investigations. Further, Defendant would have known that it had no basis for reporting that the Loan was 90-119 days past due in May of 2011 had it reviewed its own records, or simply considered that an account does not become 90-119 days past due unless the account was delinquent in the months prior.

Defendant's failure to fulfill its duties under 15 U.S.C. § 1681s-2(b)(1) was not an isolated incident. Plaintiff repeatedly brought Defendant's errors to its attention, but was repeatedly blown off by SLS. A different SLS representative responded to each of Plaintiff's disputes.[4] Nevertheless, three different SLS representatives failed to correct the obvious errors in the Account History when responding to Plaintiff's disputes. (Exhibits E, F, and G). Had any of these SLS representative conducted even a cursory review of its own records, which make crystal clear that the account was charged off in January of 2010, it would have revealed that the Account History reported regarding the loan was both inaccurate and incomplete for the reasons stated above. Accordingly, the question whether SLS "failed to investigate or rectify the disputed charge" in violation of 15 U.S.C. § 1681s-2 is a resounding, yes. *See Magruder v. Educational Systems Federal Credit Union*, 194 F.Supp.3d 386, 390 (D. Md. 2016).

These repeated failures were not simply negligent, but rises to the level of willfulness under the FCRA. Defendant's representative could not possibly have conducted a "careful inquiry" regarding Plaintiff's disputes, as required under *Johnson v. MBNA America Bank*, and reached the conclusion that the Account History reported by SLS was accurate and complaint. In addition, Defendant's representative could not possibly have reviewed the Account History reported by

---

[4] Kristen Palumbo responded to Plaintiff's January 2016 dispute. (Exhibit E). Abigail Rivera responded to Plaintiff's June 2016 dispute. (Exhibit F). Paula Phillips responded to Plaintiff's June 2016 dispute. (Exhibit G).

17

SLS, with even a basic understanding of the information contained therein, and reached the conclusion that the Account History was accurate and complete. The fact that such glaring errors and omissions could escape the eyes of Defendant's representatives on three (3) different occasions while conducting a careful inquiry defies logic.

Plaintiff requested all documents related to Defendant's investigations of Plaintiff's disputes during the course of discovery. (Exhibit T, p. 8). However, Defendant failed to produce a single document showing the actions taken by its representatives in response to Plaintiff's disputes. The only documents SLS produced that are in any way related to Plaintiff's disputes were the dispute letters sent by Plaintiff and received by Defendant, along with the actual dispute responses sent to Trans Union. Defendant's dispute responses in no way describe or otherwise document the actions taken by Defendant's representatives during the course of their investigations. (Exhibits E, F, and G). Accordingly, there is no evidence that SLS fulfilled any of its duties under 15 U.S.C. § 1681s-2(b)(1), other than reporting back to Trans Union in partial compliance with 15 U.S.C. § 1681s-2(b)(1)(C). There is no evidence that Defendant conducted any investigation regarding any of Plaintiff's disputes, let alone conducted reasonable investigations as required under 15 U.S.C. § 1681s-2(b)(1)(A), and there is no evidence showing that Defendant review all relevant information provided Trans Union as required under 15 U.S.C. § 1681s-2(b)(1)(B). SLS also failed to modify, delete, or permanently block the false information reported in the Account History portion of its trade line as required under 15 U.S.C. § 1681s-2(b)(1)(E) on three different occasions.

Such an utter and repeated failures on the part of SLS to fulfill its duties under 15 U.S.C. § 1681s-2(b)(1) on three different occasions entail unjustifiably high risks that Defendant would wrongly verify the inaccurate information SLS reported to Trans Union regarding Ms. Phillips,

18

which constitutes a willful violation of the FCRA. *Safeco Ins. Co.*, 551 U.S. 68-70; *See Berry*, 807 F.3d 605; *Stillmock*, 385 Fed. Appx. 271 (4th Cir. 2010). Therefore, Ms. Phillips is entitled to summary judgment in her favor and against SLS as to liability under Count I of the Complaint (willful violation of the FCRA on the part of SLS), or at the very least under Count II of the Complaint (negligent violation of the FCRA on the part of SLS).

## IV. CONCLUSION

SLS failed to conduct a reasonable investigation with respect to the information disputed by Ms. Phillips, and failed to review all relevant information provided by Trans Union, in violation of 15 U.S.C. § 1681s-2(b)(1)(A) and (B) on three (3) different occasions. As a result, Defendant failed to modify, delete of permanently block its reporting of inaccurate of information regarding the Loan three (3) times in violation of 15 U.S.C. § 1681s-2(b)(1)(E). Each entry in the Account History portion of Defendant's responses to all three of Plaintiff's disputes, from December of 2010 through May of 2011, are blatantly inaccurate. (Exhibits E, F, and G). Had Defendant conducted even a cursory review of its own records, the information provided by Trans Union, or simply reviewed the information reported to Trans Union with an understanding as to what that information actually meant, it would have discovered that the information it reported was inaccurate or could not be verified. Defendant, however, repeatedly failed to fulfill its duties under 15 U.S.C. § 1681s-2(b)(1) in willful violation of the 15 U.S.C. § 1681s-2(b) of the FCRA.

19

**WHEREFORE**, Plaintiff, Lisa Phillips, respectfully requests that this Honorable Court enter an order granting summary judgment in her favor and against Specialized Loan Servicing LLC as to liability under Count I of the Complaint, or in the alternative Count II of the Complaint, and scheduling a hearing on the issue of Plaintiff's damages.

Respectfully submitted,

July 20, 2017

/s/ Travis L. Shackelford
TRAVIS L. SHACKELFORD (P68710)
Michigan Consumer Credit Lawyers
Attorneys for Plaintiff
22142 West Nine Mile Road
Southfield, MI 48033
(248) 353-2882
Fax (248) 353-4840
travis@micreditlawyer.com

### Proof of Service

I, Travis L. Shackelford hereby state that on July 20, 2017, I served a copy of the within pleading upon all counsel as their address appear of record via email using the court's CM/ECF system.

/s/ Travis L. Shackelford